MANOR HEALTHCARE CORP., a corporation, Plaintiff-Appellee,

v.

Antonino GUZZO, Concetta Guzzo, Frank Greco and Concetta Greco, Defendants and Third–Party Plaintiffs–Appellants,

and

Village of Elk Grove Village, an Illinois municipal corporation, and Chicago Title Insurance Company, a Missouri corporation, Third–Party Defendants–Appellees.

No. 89–1043.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1989.

Decided Feb. 1, 1990.

Geoffrey G. Gilbert, McBride, Baker & Coles, Chicago, Ill., George B. Knickerbocker, Ronald G. Zamarin, Samelson, Knickerbocker & Payne, DesPlaines, Ill., for plaintiff-appellee.

Joseph Greco, Greco & Tarallo, Schaumburg, Ill., Maurice P. Raizes, Cornelius P. Brown, Bruce J. Waldman, Cohon, Raizes & Regal, Chicago, Ill., for defendants.

Before BAUER, Chief Judge, and FLAUM and MANION, Circuit Judges.

BAUER, Chief Judge.

The appellants, Antonino Guzzo, Concetta Guzzo, Frank Greco and Concetta Greco (collectively "Guzzo–Greco"), appeal from three orders of the district court. The first order granted Manor Healthcare Corporation's ("Manorcare") motion for summary judgment; the second order dismissed the Village of Elk Grove Village ("Elk Grove Village" or the "Village") for want of jurisdiction; and the third order denied Greco leave to file supplementary pleadings. We affirm the district court.

## I.

In August 1984, Guzzo–Greco entered into an agreement to sell real estate (the "Property") to Michael Lerner, who planned to develop the Property into a senior-care housing facility. At the time the Property was located in unincorporated Schaumburg Township, Cook County, Illinois, contiguous to the villages of Elk Grove and Roselle. Before the contract's May 1, 1986 closing date, preparations were undertaken for the Property to be annexed by Elk Grove.

In October 1985, a petition for annexation, purportedly bearing Guzzo–Greco's signatures, was filed with Elk Grove Village. Although Guzzo–Greco admit to attending several of the Village's hearings on the annexation of the Property, they now deny signing the annexation petition and claim that the signatures are forgeries. At any rate, on July 8, 1986, Elk Grove Village enacted Ordinance 1820 which annexed the Property and required payment of an annexation fee equal to 10% of the purchase price of the Property. Sometime later, the Village adopted Ordinance 1849, which amended Ordinance 1820 in that it extended the time for payment until May 1, 1987.

Lerner was unable to obtain financing for the purchase, so the transaction was not closed and the required annexation fee was not paid.

In July 1987, Guzzo–Greco entered another contract for the sale of the Property, this time with Manorcare. The Purchase Agreement provided that Guzzo–Greco would convey the Property free and clear of all liens and encumbrances and gave Manorcare the right to cure title exceptions at the seller's expense. The agreed upon price of $725,000 was later increased to $805,000.

In September 1987, Chicago Title Insurance Company ("Chicago Title") issued its title commitment, raising as an objection the unpaid 10% annexation fee required by Ordinances 1820 and 1849. On December 11, Manorcare advised Guzzo–Greco of the title exception created by Ordinances 1820 and 1849 and demanded that it be cured. Guzzo–Greco refused, instead filing with the Village a "Petition for Deannexation or in the Alternative Petition to Request Clarification of Village Record."[1] The Village denied the petition.

When Guzzo–Greco refused to close on the Purchase Agreement and cure the title defects, Manorcare filed suit against them seeking specific performance of the contract[2] and a declaratory judgement that Guzzo–Greco were required to cure exceptions under the Purchase Agreement and thus liable for the annexation fee. Guzzo–Greco filed a third-party complaint against Elk Grove Village, seeking a judgment declaring Ordinances 1820 and 1849 null and void. Guzzo–Greco also filed a third-party complaint against Chicago Title for breach

---

1. There is a factual dispute over whether Guzzo–Greco represented to Manorcare that the Property had been annexed by the Village. Manorcare, of course, claims that this representation was in fact made, and Guzzo–Greco, of course, claim that "no one represented that the [P]roperty was located in any municipality." Resolution of this factual dispute is irrelevant to the outcome of this appeal.

2. Implementing suggestions made by the district court, under which the sale transaction could proceed while the parties preserved their rights to litigate, Manorcare and Guzzo–Greco eventually consummated the transaction. Per the suggestions, Manorcare advanced $885,500 rather than $805,500. Guzzo–Greco received $724,000 of the purchase price. Two escrows of $80,500 were established with the remaining funds: one was to be used to pay the 10% fee to the Village and the other was to be awarded to the prevailing party.

of contract and negligence.[3] Guzzo–Greco then filed a motion for summary judgment against Manorcare, claiming that because annexation of the Property was void ab initio, they could not be liable for the fee. They also argued that Manorcare should be estopped from collecting the annexation fee and that Manorcare's failure to comply with certain notification requirements relieved them of liability. Manorcare and Chicago Title both filed cross-motions for summary judgment.

On October 20, 1988, the district court granted Manorcare's and Chicago Title's motions for summary judgment, denying Guzzo–Greco's motions. Guzzo–Greco then filed a motion for reconsideration and for leave to file supplemental pleadings. The district court denied Guzzo–Greco's motion and also dismissed the pendent claims against the Village. Guzzo–Greco then filed a timely notice of appeal.

## II.

■ Guzzo–Greco's first argument on appeal is that the district court erred by granting Manorcare's motion for summary judgment. The district court granted Manorcare's motion on the basis that, under the clear and plain terms of the Purchase Agreement, Guzzo–Greco were obligated to cure exceptions to title and the annexation fee required by Ordinances 1820 and 1849 constituted an exception to title. In the court below, Guzzo–Greco did not dispute either of these conclusions: Guzzo–Greco admitted that if Ordinances 1820 and 1849 were valid, then the annexation fee required by them would constitute an exception. Guzzo–Greco argued, however, that Ordinances 1820 and 1849 were "null and void" because the annexation fee was not paid by May 1, 1987 as required by Ordinance 1849, and thus no annexation fee was owed to the Village. The district court recognized that the validity of the ordinances as originally enacted turned upon the resolution of a number of factual disputes. The court found, however, that the

validity of the ordinances annexing the Property was a non-issue since Guzzo–Greco had subsequently ratified the annexation. Because the facts surrounding the ratification were not in dispute, the court found that the annexation fee was owing to the Village and that under the clear language of the Purchase Agreement, Guzzo–Greco were liable for that fee. The district court therefore entered summary judgment in favor of Manorcare.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Quoting *Schoenberger v. Chicago Transit Authority*, 84 Ill.App.3d 1132, 1138–39, 39 Ill.Dec. 941, 947, 405 N.E.2d 1076, 1082 (1st Dist.1980), the district court set forth the law of ratification:

> Ratification may be express or inferred and occurs where "the principal [in this case Guzzo–Greco], with knowledge of the material facts of the unauthorized transaction, takes a position inconsistent with nonaffirmation of the transaction".... Ratification is the equivalent [of] an original authorization and confirms that which was originally unauthorized.

The court then applied the law to the facts and found that Guzzo–Greco had engaged in an "affirmative act" constituting a ratification of the Village's annexation. None of the facts which the district court found to constitute ratification of the annexation are in dispute. On December 2, 1987, Manorcare and Guzzo–Greco submitted a joint "Petition for Special Use Permit to the Village of Elk Grove Village." The petition requested a special use zoning ordinance permitting Manorcare to construct a 120–bed nursing home and acute care facility on the Property. (Guzzo–Greco had to join in the petition because they were titleholders to the Property.) By joining in the petition, the district court held that Guzzo–Greco necessarily recognized that the Property had been validly annexed, for the Vil-

---

**3.** The district court dismissed the complaint against Chicago Title with prejudice. Guzzo–Greco did not appeal this order.

lage could grant the special use ordinance only if the Village had jurisdiction to do so—that is, if the Property were in fact located within the Village. The court thus refused to allow Guzzo–Greco to recognize and confirm the annexation as valid on December 2, 1987, and then change their position to argue that the annexation was void in opposition to summary judgment.

On appeal, Guzzo–Greco do not argue that the district court incorrectly applied the law of ratification, nor do they dispute the facts which the district court found to constitute ratification. Nor could they. Recognizing the futility of pursuing an argument in opposition to the reasoning of the district court, Guzzo–Greco have changed their theory of the case on appeal. Guzzo–Greco now contend that the $80,500 paid to the Village out of the escrow agreement in satisfaction of the annexation fee, see supra note 2, was not really payment for the annexation fee, but rather payment for another fee required by the Village and one which Manorcare should be required to pay. The lack of merit of this argument need not be pursued because, whatever its merits, Guzzo–Greco have waived the argument by failing to raise it in the district court.[4]

We find that the district court correctly determined that there were no genuine issues of material fact in dispute and that Manorcare was entitled to judgment as a matter of law. Further, we find that any arguments in opposition to summary judgment not properly raised in the district court are waived. We therefore affirm the district court's grant of summary judgment to Manorcare.

### III.

Guzzo–Greco's second and third arguments on appeal do not merit much discussion. Guzzo–Greco's second argument on appeal is that the district court abused its discretion by dismissing their pendent state claims against Elk Grove Village for want of jurisdiction. We disagree.

After the district court granted summary judgment to Manorcare, there remained no federal claims before the district court.[5] Accordingly, the court correctly declined to exercise jurisdiction over the pendent state claims asserted against the Village. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). See also Landstrom v. Illinois Dep't of Children and Family Services, 892 F.2d 670, 679–80 (7th Cir.1990). Indeed, in this situation, where there was no other basis for jurisdiction other than pendent jurisdiction and where there were no extraordinary circumstances justifying retention of the state law claims (Guzzo–Greco have alleged none),[6] the district court would have abused its discretion in permitting the case against Elk Grove Village to proceed. See Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc., 781 F.2d 604, 611–12 (7th Cir.1986); Bernstein v. Lind–Waldock & Co., 738 F.2d 179, 186–88 (7th Cir.1984).

Guzzo–Greco's third argument on appeal is that the district court abused its discretion by denying their postjudgment motion for leave to file a counterclaim. The proposed counterclaim alleged "breach of contract and fraud on the part of Manorcare in colluding with Elk Grove to have the dis-

---

4. Although Guzzo–Greco advanced this theory in their motion for reconsideration, they were still too late. Raising an issue in a motion for reconsideration does not save the issue for appeal. See Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 404 (7th Cir.1988). See also Publishers Resource, Inc. v. Walker–Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985) ("[M]otions [for reconsideration] cannot ... be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion.... Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.").

5. Summary judgment disposed of two of Manorcare's three claims against Guzzo–Greco. Manorcare asked for a voluntary dismissal without prejudice of the third claim, which the district court granted.

6. For example, federal courts have retained jurisdiction over pendent state claims where the statute of limitations has run on filing the pendent claim as an independent lawsuit in state court. See, e.g., Duckworth v. Franzen, 780 F.2d 645, 656 (7th Cir.1985); O'Brien v. Continental Illinois Nat'l Bank & Trust Co., 593 F.2d 54, 65 (7th Cir.1979).

puted fee labeled as an 'annexation fee' and thwarting Guzzo–Greco's attempts to terminate Elk Grove's claim to the fee." The proposed counterclaim also alleged that Elk Grove Village engaged in collusion and fraud.

A district court's decision to deny leave to amend after judgment has been entered is reviewable only for abuse of discretion. *Twohy v. First Nat'l Bank of Chicago,* 758 F.2d 1185, 1196 (7th Cir.1985). "Delay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for district court not to permit an amendment." *Id.* (*quoting United States Labor Party v. Oremus,* 619 F.2d 683, 692 (7th Cir.1980)). Guzzo–Greco's proposed counterclaim is based upon facts of which they admit having knowledge before the district court entered summary judgment. Because Guzzo–Greco had the opportunity to present their counterclaim prior to the entry of judgment but delayed doing so, the district court did not abuse its discretion in denying their motion for leave to amend.

### IV.

For the foregoing reasons, the decision of the district court is

AFFIRMED.